**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                               No. 94-5809

DERRICK GREEN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-93-180-S)

Submitted: January 23, 1996

Decided: March 18, 1996

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

James K. Bredar, Federal Public Defender, Denise C. Barrett, Assis-
tant Federal Public Defender, Martin Bahl, Staff Attorney, Baltimore,
Maryland, for Appellant. Lynne A. Battaglia, United States Attorney,
Bonnie S. Greenberg, Joseph H. Young, Assistant United States
Attorneys, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Derrick Green was convicted by a jury of conspiracy to distribute crack cocaine, 21 U.S.C.A. § 846 (West Supp. 1995), and money laundering, 18 U.S.C.A. § 1956(a)(1)(B)(i) (West Supp. 1995), 18 U.S.C. § 2 (1988). He received a sentence of 360 months imprisonment. Green appeals his conviction, contending that the district court abused its discretion by excusing two jurors for cause after conducting an inadequate voir dire and in permitting a government witness to vouch for the trustworthiness of other government witnesses. He also appeals his sentence on the grounds that the 100-to-1 sentencing ratio for crack and cocaine offenses has no rational basis in light of the Sentencing Commission's recent recommended amendments to the sentencing guidelines and that the district court erred in refusing to depart downward because of the disparate impact of the crack penalties on African Americans. Finding no error, we affirm in part and dismiss in part.

During jury selection, the district court granted the government's motion to excuse Jane Rostov for cause. Rostov had been a juror in a previous drug trial. She described it as a "dreadful, dreadful experience," and informed the court that she believed the defendant in that trial was convicted because the jury wanted to get out for the weekend. When the district court asked, "Do you feel the same situation might be applicable here?" Rostov answered, "I hope not, but I don't know." Over defense counsel's objection, the district court excused Rostov because, "from her view and whatnot, . . . she's very concerned about the way the trial would be conducted and I think she would rely heavily on her prior experience." A second juror, Gordon Schwarz, who would have been an alternate, was excused because he said he had signed petitions for the legalization of drugs and would have a moral difficulty in serving on the jury. The court expressed "misgivings as to whether he can instinctively . . . render an impartial verdict."

2

Citing Wainwright v. Witt, 469 U.S. 412, 424 (1985), Green maintains that the district court should have inquired further of both potential jurors to find out whether they could set aside their personal views and experiences and render an impartial verdict on the evidence. The court was required to make that determination, but was not required to follow any particular formula in doing so. District courts are given wide discretion in conducting voir dire to determine whether a particular juror should be excused. Person v. Miller , 854 F.2d 656, 665 (4th Cir. 1988), cert. denied, 489 U.S. 1011 (1989). Here, the district court questioned Rostov at some length and concluded that her experience in a prior case would make it difficult for her to be impartial. Schwarz stated that he had a moral problem with serving on the jury in a drug case. His statement made further questioning unnecessary. We find that the district court did not abuse its discretion in concluding that either juror should be excused.

Eight witnesses who had worked with or for Green testified at trial about his drug trafficking. Internal Revenue Service Agent Edward Calhoun, a summary witness,* also testified that Green had spent approximately $65,000 from April 1991 to January 1992, although his only known legal income during that time was $4500 from gambling. Calhoun estimated Green's expenditures using records of rental payments and purchases of furniture and jewelry, as well as evidence of wire transfers, payment of legal fees, and the purchase of a car for $8700 in cash. Under cross-examination, Calhoun agreed that some of his information came from informants and was only accurate to the extent that they were reliable, but he stated that he did not take such information at face value.

On redirect, the prosecutor asked Calhoun whether he usually attempted to corroborate the information he received from informants. Green's attorney objected on relevance grounds and was overruled. The prosecutor then asked Calhoun what kind of corroboration he looked for--which Calhoun briefly described--and whether he had made that effort with regard to Bobby Armstrong, one of the government witnesses. Green's attorney again objected and this time argued that the question amounted to vouching for the credibility of the gov-

_____

*Fed. R. Evid. 1006 permits certain types of evidence to be presented in summary form.

3

ernment's witnesses. The district court held that the government could ask Calhoun about his general procedure for corroboration. The government's last question was whether Calhoun had looked for corroboration of the testimony in this case, to which Calhoun again answered that he had.

It is error for the government to vouch for the credibility of its witnesses, either through the prosecutor or a government witness who testifies as to the trustworthiness of other witnesses. United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). However, the government may explain its investigative procedures. Id. While Calhoun's affirmation that he had attempted to corroborate Bobby Armstrong's information and that of the other government witnesses bordered on vouching, Calhoun did not express an opinion as to the credibility of any of the witnesses. Moreover, this line of questioning was quickly cut off and the prosecutor did not pursue it after the bench conference except for one general question (which the court had previously allowed) about whether Calhoun made a practice of attempting to corroborate information from informants.

Green argues that the district court abused its discretion in permitting any evidence that Calhoun had corroborated the testimony of the government witnesses. However, Calhoun did not say he had been able to corroborate the information he received. Rather, he testified that he always corroborated information from informants "to the extent possible," using various techniques. Such testimony about investigative techniques was admissible, and the district court did not abuse its discretion in allowing it.

After his conviction, Green raised a number of constitutional challenges to the penalties for crack offenses, all of which were rejected by the district court. He renews these challenges on appeal. First, Green concedes that this Court has already ruled that the 100-to-1 severity ratio for offenses involving crack and cocaine has a rational basis, United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir. 1990), but asks this panel to suggest an in banc hearing to reconsider the issue in light of the Sentencing Commission's 1995 proposed amendment (not adopted by Congress) to eliminate the difference in sentencing for the two types of offenses. We decline to do so.

4

Next, Green seeks review of the district court's denial of a downward departure on the ground that the Sentencing Commission failed to take into account that there is no difference between crack and cocaine and because of the disparate impact of the current penalty structure on African Americans. The district court declined to depart, finding that a departure was precluded by United States v. Bynum, 3 F.3d 769, 774-75 (4th Cir. 1993), cert. denied , ___ U.S. ___, 62 U.S.L.W. 3552 (U.S. Feb. 22, 1994) (No. 93-7295), which held that the disparate impact of the crack sentencing scheme was not foreseen by the Sentencing Commission but was not a proper basis for a departure. The court's decision not to depart is not reviewable on appeal. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990).

We therefore affirm the sentence imposed by the district court. We dismiss that portion of the appeal which challenges the district court's decision not to depart. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, DISMISSED IN PART

5